**United States District Court**
For the Northern District of California

1
2
3
4          IN THE UNITED STATES DISTRICT COURT
5          FOR THE NORTHERN DISTRICT OF CALIFORNIA
6
7   XCENTRIC VENTURES, LLC, an Arizona          No. C 10-80058 (SI)
    limited liability company,
8                                               **ORDER DENYING DEFENDANT'S**
         Plaintiff,                             **MOTION TO VACATE DEFAULT**
9                                               **JUDGMENT**
         v.
10
    ELIZABETH ARDEN d/b/a
11  COMPLAINTSBOARD.COM,
12       Defendant.
13  _____/
14
         Defendant has filed a motion to vacate a default judgment entered against it in  the United States
15
    District Court for the District of Arizona.  The motion is set for hearing on June 25, 2010.  Pursuant to
16
17  Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and
18  hereby VACATES the hearing.  Having considered the papers submitted and for good cause shown, the
19  Court DENIES the motion to vacate the default judgment.
20
21
22                                  **BACKGROUND**
23       Plaintiff Xcentric Ventures, LLC, an Arizona limited liability company, operates a consumer
24  complaint and free speech web forum located at www.RipoffReport.com ("Rip-off Report").  Rip-off
25  Report is widely used by the public and works in concert with government agencies, attorneys general,
26  and other federal, state and local law enforcement agencies to help report, identify and prevent consumer
27  fraud.  Compl. ¶ 6.  Defendant ComplaintsBoard.com ("ComplaintsBoard") is a corporation of
28  unsubstantiated origin, allegedly based in Latvia, and is Xcentric Ventures' competitor.  Defendant

**United States District Court**
For the Northern District of California

1  operates www.complaintsboard.com, which allegedly performs a function substantially similar to that

2  of plaintiff's website. *See* Compl. ¶¶ 20-22.

3  The complaint alleges that since at least November 2008, defendant has copied, and continues

4  to copy, plaintiff's registered trademark "RIP-OFF REPORT" as well as large quantities of copyrighted

5

6  material from Rip-off Report without plaintiff's permission or consent. Compl. ¶¶ 23-24. Plaintiff

7  claims that defendant's alleged unlawful use of plaintiff's trademarks and copyrighted materials has

8  caused substantial confusion among consumers "who have been misled into believing that Plaintiff is

9
   the owner and/or operator" of the ComplaintsBoard website. Compl. ¶ 25.
10

11  Plaintiff allegedly learned of the infringing activity in April 2008, when it received a letter from

12  an attorney named Michael Grace, reflecting Mr. Grace's belief that plaintiff was the proprietor of

13  ComplaintsBoard. Plaintiff alleges that upon receipt of this complaint, it began investigating

14  ComplaintsBoard, which had theretofore been unknown to plaintiff. Plaintiff found that consumers

15
    mistakenly believed that plaintiff operated the ComplaintsBoard website, based on defendant's use of
16

17  plaintiff's name, content and trademarks on the website. As a result, plaintiff filed the underlying

18  lawsuit on December 17, 2008 in the District of Arizona against ComplaintsBoard. The complaint set

19  forth causes of action for (1) copyright infringement; (2) trademark infringement; (3) unfair

20  competition/initial interest confusion trademark infringement; and (4) injunctive relief.

21
    Plaintiff had difficulty serving the complaint on defendant because defendant did not list an
22

23  address on its website. Plaintiff therefore sought leave from the District of Arizona to serve the

24  summons and complaint through alternative means pursuant to Fed. R. Civ. P. 4(h). *Id.* The District

25  of Arizona granted the motion and required that plaintiff serve the complaint and summons on defendant

26  by publication, by mail to any known address, by e-mail to defendant's self-identified e-mail address,

27  and orally or by voice mail at the telephone number affiliated with defendant. Order Granting Def.'s

28  Mot. for Alt. Service at 2. Plaintiff received a response from editor.complaintsboard@gmail.com.

2

**United States District Court**
For the Northern District of California

1    According to plaintiff, despite having registered its domain name and identifying its physical address

2    in California, defendant claimed to be located in Europe and thus unable to answer the complaint.

3    Defendant never filed an answer to the complaint.

4

5         On October 1, 2009, plaintiff filed a motion for entry of default judgment against defendant.  On

6    October 22, 2009, the District of Arizona issued an order granting plaintiff's motion for entry of default

7    judgment and awarded plaintiff $60,000 in monetary damages and injunctive relief.  Plaintiff sent an

8    e-mail containing the judgment to defendant on November 9, 2009.  Plaintiff's counsel allegedly

9    received a response from ComplaintsBoard acknowledging that it had copied content from plaintiff's

10   website.  Pl.'s Opp'n to Def.'s Mot. to Vacate Default J. at 7.

11

12        Plaintiff registered the default judgment in the Northern District of California and served a third

13   party subpoena on Google, Inc. seeking information regarding the ComplaintsBoard Gmail account.

14   Defendant responded by filing a motion to quash the subpoena on December 3, 2009 in this district.  The

15   motion was denied in an order issued by Magistrate Judge Trumbull on January 27, 2010.

16        Presently before the Court is defendant's motion to vacate the default judgment issued by the

17   District of Arizona for lack of personal jurisdiction.

18

19

20                                    **LEGAL STANDARD**

21

22        A district court may relieve a party from a final judgment if the judgment is void.  Fed. R. Civ.

23   P. 60(b)(4).  A judgment is considered void if the rendering court did not have personal jurisdiction.

24   *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Courts "generally prefer litigants to bring motions for

25   [relief from judgment] in the rendering court."  *F.D.I.C. v. Aaronian*, 93 F.3d 636, 639 (9th Cir. 1996).

26   However, a court of registration asked to enforce a judgment "has jurisdiction to entertain motions

27   challenging the underlying judgment," stemming both from Rule 60(b) and the court's inherent

28   equitable power.  *Id.*

3

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

**I.      Fed. R. Civ. P. 60(b)(4)**

As an initial matter, plaintiff contends that this Court has no jurisdiction to entertain motions challenging an underlying judgment of the District of Arizona.  Plaintiff is correct that the law favors a policy of deference to the rendering court, and that in weighing whether to entertain a Rule 60(b) attack on a foreign court's ruling, a registering court must consider convenience, comity, and efficient judicial administration, all of which typically counsel in favor of deference to the rendering court.  *In re Joint Asbestos Litig.*, 22 F.3d 755, 762 (7th Cir. 1994).  However, the case law on point makes clear that a district court enforcing a foreign judgment has a broad discretionary ability to choose whether to hear a Rule 60(b)(4) motion filed against the foreign judgment.  *Aaronian*, 93 F.3d at 639.

Several circuits have recognized that exercise of this discretion is particularly appropriate where the motion for relief from judgment challenges the personal jurisdiction of the rendering court.  *See Indian Head Nat'l Bank v. Brunelle*, 689 F.2d 245, 249 (1st Cir. 1982); *Covington Indus., Inc. v. Resintex, A.G.*,  629 F.2d 730, 734 (2d Cir. 1980); *Asbestos Litig.*, 22 F.3d at 763.

This case falls squarely within this personal jurisdiction exception.  Plaintiff has registered the default judgment of the District of Arizona with this Court in an effort to enforce that court's judgment, and defendant has moved the Court pursuant to Rule 60(b)(4) to vacate the default judgment on the ground that the rendering court lacked personal jurisdiction.  In this context, the standard assumptions about the rendering court's superior facility with the facts of the case do not apply, and the Court may, at its discretion, entertain defendant's motion.  The defendant having also moved in this district to quash plaintiff's third party subpoena to Google, Inc., it is logical under the circumstances, and in the interests of administrative convenience and efficient judicial resolution, to resolve the personal jurisdiction dispute in this forum.

4

**United States District Court**
For the Northern District of California

**II.      Personal Jurisdiction**

Plaintiff contends that the District of Arizona properly asserted personal jurisdiction over defendant, and consequently, that the Court should deny defendant's motion to vacate the default judgment.  Personal jurisdiction over a non-resident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or sufficient minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction).  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Plaintiff contends only that the District of Arizona had specific jurisdiction over defendant, and the Court limits its inquiry accordingly.  *See* Pl.'s Opp'n to Def.'s Mot. to Vacate Default J. at 15.

A court may assert specific jurisdiction over a non-resident defendant if the defendant has or had sufficient minimum contacts with the forum state.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  Under Ninth Circuit case law, in order to establish the existence of personal jurisdiction, it must be shown that  (1) the non-resident defendant purposefully directed his activities or purposefully availed himself of the privilege of conducting activities in the forum state; (2) the cause of action arises out of or relates to the defendant's activities pertaining to the forum state; and (3) the exercise of jurisdiction was reasonable.  *Id.* at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  Plaintiff bears the burden of satisfying the first two prongs; however, if plaintiff succeeds, the burden shifts to defendant to demonstrate that the exercise of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

**A.      Purposeful Direction**

Under the first prong of the Ninth Circuit's specific jurisdiction test, plaintiff must establish that defendant purposefully directed its activities toward Arizona.  A purposeful direction analysis is most often employed in cases sounding in tort, where a non-resident defendant outside the forum state has

1 directed his tortious activity at plaintiff in the forum state. *See, e.g., Calder v. Jones*, 465 U.S. 783, 789

2 (1984) (finding exercise of personal jurisdiction proper where non-resident editor of national publication

3 "expressly aimed" libelous comments at plaintiff in California); *Keeton v. Hustler Magazine, Inc.*, 465

4 U.S. 770, 774-75 (1984). Under the so-called *Calder* "effects" test, a court may exercise specific

5

6 jurisdiction if a defendant has allegedly "(1) committed an intentional act, (2) expressly aimed at the

7 forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole*

8 *Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (citing *Calder*, 465 U.S. at 789-90).

9

10

### 1. Intentional Act

11

12 With respect to the first prong of the *Calder* test, "intentional act" simply denotes an "intent to

13 perform an actual physical act in the real world," completely independent of any results stemming from

14 that act, no matter how direct (or remote). *Schwarzenegger*, 374 F.3d at 806 (finding defendant's use

15 of plaintiff's image in advertisement intentional); *Panavision v. Toeppen*, 141 F.3d 1316, 1316 (9th Cir.

16

17 1998) (finding defendant's registration of Panavision's trademarks as a domain name in furtherance of

18 his scheme to secure money from Panavision intentional).

19 In this case, defendant allegedly copied plaintiff's terms of service and embedded plaintiff's

20 trademark in its metatags with the purpose of directing consumers searching for plaintiff's website to

21 defendant's website. Resolving all factual disputes in favor of the plaintiff, as the Court must for this

22
jurisdictional inquiry, *Doe I. v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (per curiam), this easily

23

24 constitutes a "physical act done in the real world," consciously executed by defendant. Irrespective of

25 any result, defendant therefore committed an intentional act.

26

27 ### 2. Express Aiming

28

In order to satisfy the second prong of the *Calder* test, a defendant must have expressly aimed

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   his tortious conduct at plaintiff in the forum state.  The express aiming analysis "depends to a significant

2   degree, on the specific type of tort at issue." *Schwarzenegger*, 374 F.3d at 806.  The Ninth Circuit has

3   held that trademark infringement may be sufficiently analogous to a tort to satisfy the *Calder* test.

4   *Panavision*, 141 F.3d at 1321.  However, the conduct must manifest "something more" than the mere

5   registration of a trademark as a domain name and establishment of a passive website at that address.

6

7   *Compare Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (finding mere registration

8   of trademark as domain name by Florida corporation which did no business in Arizona insufficient to

9   constitute express aiming at Arizona trademark owner that transacted no business in Florida) *with*

10   *Panavision*, 141 F.3d at 1321-22 (finding defendant's registration of plaintiff's trademark as domain

11   name for purpose of extorting money from plaintiff sufficient to establish express aiming).

12

13       In this case, defendant's conduct, as alleged in the pleadings, rises above the level of innocuous

14   or passive trademark infringement.  Plaintiff alleges that defendant created metatags incorporating

15   plaintiff's registered trademark, Rip-off Report, with the intent to direct consumers searching for

16   plaintiff's website toward defendant's substantially similar site, and presumably in order to gain an

17

18   unfair advantage over plaintiff, its direct competitor.  Plaintiff, moreover, alleges that defendant

19   intentionally copied plaintiff's terms of service, leaving at least one reference to plaintiff.  Plaintiff has

20   also produced evidence that defendant admitted to copying plaintiff's Terms of Service in an e-mail, and

21   that consumers actually believed plaintiff to be proprietor of ComplaintsBoard.com.  As plaintiff's

22

23   Arizona citizenship is listed on its website, it is reasonable to infer that defendant was aware of

24   plaintiff's place of business, and that it thus expressly aimed its alleged infringement activities at

25   plaintiff in Arizona.  Plaintiff has thus met its burden in the second prong.

26

27       **3.       Foreseeable Harm**

28

Finally, the third prong of the *Calder* test requires that a defendant's expressly aimed conduct

**United States District Court**
For the Northern District of California

1    have caused foreseeable harm to plaintiff in the forum state. *Calder*, 465 U.S. at 783.  In creating

2    metatags containing references to plaintiff's trademark, Rip-off Report, and copying plaintiff's terms

3    of service, Defendant could not reasonably have been unaware that it would divert some of plaintiff's

4    users to its own site, and that by diminishing the number of plaintiff's users, it would materially harm

5    plaintiff's business.  Defendant argues that only one percent of its users are from Arizona, and that this

6    percentage is so insignificant that it could not have foreseen being haled into court in Arizona by

7    operating a passive website.  However, the fact that only 6,850 out of defendant's 500,000 users are

8    Arizona residents is unavailing to defendant's case.  In fact, this figure is misleading.  First, it

9    understates the impact defendant's alleged trademark and copyright infringement could have had on

10   plaintiff's business, even assuming that only Arizona residents read plaintiff's website.  Second, it

11   overlooks the crucial point that plaintiff's users, like defendant's, are located all over the world.  Indeed,

12   the scope of defendant's alleged purposeful (not passive) infringement activities is not confined to the

13   borders of Arizona, but rather conceivably extends to plaintiff's users worldwide, and has potentially

14   diminished plaintiff's readership by a number far in excess of the proffered figure of 6,850.  Thus, as

15   plaintiff clearly lists its Arizona address on its website, the defendant's alleged global misconduct has

16   foreseeably resulted in harm to the plaintiff in Arizona.

17

18       **B.       Contact with the Forum State**

19            The second prong of the Ninth Circuit's specific jurisdiction test requires that the cause of action

20   arise out of a non-resident's contacts with the forum state.  *Schwarzenegger*, 374 F.3d at 802.  Since

21   defendant  purposefully directed its alleged trademark and copyright infringement activities at plaintiff

22   in Arizona, this case for trademark and copyright infringement clearly arose out of those contacts.

**United States District Court**
For the Northern District of California

### C.     Reasonableness

The third prong of the Ninth Circuit's specific jurisdiction test requires that the exercise of

jurisdiction be reasonable.  *Id.*  Because defendant purposefully directed its activities at Arizona, the

District of Arizona's exercise of jurisdiction was presumptively reasonable and comports with the Due

Process Clause's requirement that the assertion of jurisdiction "not offend traditional notions of fair play

and substantial justice."  *Int'l Shoe*, 326 U.S. at 316; *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.

1995).  Defendant accordingly has the burden of demonstrating that defending itself in Arizona would

have been an unreasonable burden.  *Ballard*, 65 F.3d at 1498.

Defendant has failed to carry this burden, and fails to meet most of the factors generally

considered in weighing the reasonableness of jurisdiction.  These factors include: (1) Arizona's interest

in adjudicating the dispute; (2) plaintiff's interest in obtaining convenient and effective relief; (3)

defendant's burden of litigating in Arizona; and (4) the interstate judicial system's interest in the

controversy's most efficient resolution.  *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102,

113 (1987) (citing World-*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Roth v.

Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).  None of these factors is dispositive, and any might

prove decisive.  *Garcia Marquez*, 942 F.2d at 623.

First, Arizona had a paramount interest in protecting business interests and intellectual property

of Arizona residents from infringement by non-residents.  Second, plaintiff had a strong interest in

securing an immediate injunction against defendant in order to halt its alleged diversion of users to its

site and consequential damage to its business interests.  Third, defendant's burden of litigating from

Latvia would admittedly be great, and weighs in defendant's favor, but is insufficient in itself  to merit

dismissal on due process grounds where minimum contacts have been established.  *See Asahi*, 480 U.S.

at 114 ("When minimum contacts have been established, often the interests of the plaintiff and the forum

in the exercise of jurisdiction will justify even severe burdens on the alien defendant.").  Defendant  may

9

not wield the Due Process Clause "as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 474. Defendant's capacity to hire foreign counsel and litigate in the present forum, moreover, casts doubt on the severity of defendant's litigation burden in Arizona. Finally, Arizona was the most logical forum within the United States in which to litigate this controversy, as plaintiff is an Arizona resident and Arizona was the locus at which the harm was inflicted. Thus, at least three of the four factors weigh decisively in plaintiff's favor, and outweigh the burden on defendant of litigating from Latvia. The District of Arizona's exercise of jurisdiction was therefore reasonable.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's Motion to Vacate Default Judgment.

**IT IS SO ORDERED.**

Dated: June 23, 2010

SUSAN ILLSTON
United States District Judge