David S. Gingras, CSB #218793
**Gingras Law Office, PLLC**
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
Tel.: (480) 668-3623
Fax: (480) 248-3196
David.Gingras@webmail.azbar.org

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, an Arizona limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>ELIZABETH ARDEN d/b/a COMPLAINTSBOARD.COM; MELBOURNE IT DBS, INC., a Delaware corporation; INTERNET NAMES WORLDWIDE, INC., a Delaware corporation; DOES 1-10, inclusive,<br><br>    Defendants. | Case No: 3:10-mc-80058-SI<br><br>**XCENTRIC VENTURES' REPLY IN SUPPORT OF MOTION FOR ISSUANCE OF WRIT OF EXECUTION**<br><br>Hearing Date:   September 17, 2010<br>Time:           9:00 a.m.<br>Courtroom:      Hon. Susan Illston<br>Dept:           Courtroom 10 |

  Plaintiff, Xcentric Ventures, LLC ("Xcentric") requests that the Court issue a Writ of Execution to levy upon the domain name "complaintsboard.com". Defendant Elizabeth Arden d/b/a ComplaintsBoard.com ("ComplaintsBoard") has failed to identify any legally cognizable basis to disallow such execution. Moreover, they do not dispute the Affidavit of Identity, thereby implicitly recognizing the authority of this Court to issue such an order and allow execution of the identified domain name. The only objections articulated by ComplaintsBoard that can be considered by the Court are that

1

GINGRAS LAW OFFICE, PLLC
4072 E. MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

1  (1) the headquarters of the domain name registry for "complaintsboard.com" is not
2  subject to the jurisdiction of this Court; and (2) an execution against the domain name
3  would be "inequitable." As explained herein, such arguments are not viable objections to
4  the issuance of a Writ of Execution, and therefore, Xcentric's Application should be
5  granted and the Writ should immediately be issued by this Court.

## I. PREFATORY STATEMENT

Xcentric has a sound legal basis to execute on the domain name www.complaintsboard.com (the "Domain Name") because Xcentric is attempting to collect on a valid and binding Judgment. ComplaintsBoard has already tried – and failed – to vacate the Judgment entered against it. Their arguments as to the "bogus" nature of Xcentric's claims are both frivolous and untimely, and, more importantly, have already been heard and discarded by both this Court, as well as the District of Arizona. ComplaintsBoard had ample opportunity to (1) defend itself in the underlying litigation; (2) object to the language of the Judgment after default had been entered; and (3) comply with the terms and provisions of the Judgment. It has chosen to do none of the above, and instead of demonstrating even marginal compliance with the Judgment, simply fight Xcentric in attempting to execute upon the same.

## II. THE DOMAIN NAME CAN PROPERLY BE EXECUTED ON IN THE NORTHERN DISTRICT OF CALIFORNIA

Even assuming the recitation of VeriSign's recent mobilization as true, VeriSign still retains an office in Mountain View, California. *See* **Exhibit "A"**, printout from VeriSign, Inc. website, last visited September 1, 2010. Moreover, VeriSign provided a Notice regarding the acquisition, which directs parties to the Mountain View, California location. *Id*. Notably, ComplaintsBoard provides no support for the proposition that the "actual registry…[is] located in Dulles, Virginia." *See* Response at p. 5. There is no reason to believe that the Mountain View, California office of VeriSign does not possess the same capabilities as the Dulles office to provide for execution on the Domain Name.

2

**REPLY IN SUPPORT**           Case No: 3:10-mc-80058-SI

GINGRAS LAW OFFICE, PLLC
4072 E. MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

Whereas a domain name is "property" for the purposes of being able to effectuate a Writ of Execution, *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir.2003), it is not physical or tangible to the extent that it can only be located in this district. *See also Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 702 (9th Cir. 2010). In this Court's ruling in *Office Depot, Inc. v. Zuccarini*, 621 F. Supp. 2d 773, 778 (N.D. Cal. 2007), it recognized the "somewhat metaphysical question of where the intangible property comprising a domain name exists," and held that "a domain name exists in the location of both the registrar and the registry."

The next logical question, then, is whether the "location of the registry" is only the "world headquarters" of the registry, or any location where the registry holds itself out as doing business. Because there has been no holding exactly on point, it is necessary to look to the guiding principles provided by *Zuccarini*. In *Zuccarini*, this Court held, and the Ninth Circuit agreed, that the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C. § 1125(d) should provide guidance in determining where a registry is located. *Zuccarini*, 621 F. Supp. 2d at 777; *see also Zuccarini*, 596 F.3d at 702 (finding that the ACPA "is authority for the proposition that domain names are personal property located wherever the registry or the registrar are located."). The language of the ACPA is no more helpful in further defining the phrase "wherever the registry [is] located."

California law may provide assistance as to where the registry is located for purposes of execution of property. It defines "personal property" as including "both tangible and intangible personal property." CCP § 680.290. The "intangible personal property" includes the Domain Name. Pursuant to the California rules, the levying officer of a writ of execution simply has to "execute the writ in the manner prescribed by law." CCP § 699.530. In the event of a levy against intangible personal property, the levying officer "shall personally serve a copy of the writ of execution and a notice of levy on the account debtor." CCP § 700.170(a). Logically, the "account debtor" (in this case,

GINGRAS LAW OFFICE, PLLC
4072 E. MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

3

**REPLY IN SUPPORT**                                Case No: 3:10-mc-80058-SI

VeriSign) can be personally served in this District, and therefore, this Court would have jurisdiction over the Application.

### III. XCENTRIC IS ENTITLED TO COLLECT ON ITS MONEY JUDGMENT THROUGH A WRIT OF EXECUTION

It is clear that "'[t]he proper means ... to secure compliance with a money judgment is to seek a writ of execution.'" *Hilao v. Estate of Marcos*, 95 F.3d 848, 854 (9th Cir. 1996) (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir.1983)). Xcentric is attempting to do just that. *See Zuccarini*, 596 F.3d at 702 (holding that "domain names are intangible property subject to a writ of execution."). There are no judicial or statutory requirements that Xcentric attempt to execute upon certain property of ComplaintsBoard before executing on the Domain Name; instead, Xcentric simply has to adhere to the procedures on execution of the State of California. *See* Fed.R.Civ.P. Rule 69. Under California law, "all property of the judgment debtor is subject to enforcement of a money judgment." CCP § 695.010; *see also* CCP § 699.710 ("all property that is subject to enforcement of a money judgment [ ] is subject to levy under a writ of execution to satisfy a money judgment."). That necessarily includes the Domain Name. As explained by the court in *Mandel v. Myers*, "[t]he issuance of a writ of execution is an inherent judicial power." *Mandel v. Myers*, 29 Cal. 3d 531, 571, 629 P.2d 935, 960 (1981). Indeed,

> The award of execution is a part, and an essential part of every judgment passed by a court exercising judicial power. It is no judgment, in the legal sense of the term, without it. Without such an award the judgment would be inoperative and nugatory, leaving the aggrieved party without a remedy. It would be merely an opinion, which would remain a dead letter, and without any operation upon the rights of the parties, unless Congress should at some future time sanction it, and pass a law authorizing the court to carry its opinion into effect. Such is not the judicial power confided to this Court ....

*Id.* (quoting *Gordon v. United States*, 69 U.S. (2 Wall.) 561, 17 L.Ed. 921 (1865) (appen. by Taney, C.J., at 117 U.S. 697, 702); see also *F. H. A. v. Burr*, 309 U.S. 242, 250, 251, 60 S.Ct. 488, 492, 84 L.Ed. 724 (1940). Xcentric must be allowed to execute upon the Judgment.

GINGRAS LAW OFFICE, PLLC
4072 E. MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

4

REPLY IN SUPPORT                                    Case No: 3:10-mc-80058-SI

To support its argument on the equities of allowing Xcentric to execute upon the Domain Name, ComplaintsBoard presents a number of inartful conclusions that are unsupported by any relevant case law. First, ComplaintsBoard argues that since its activities "weren't as bad" as those undertaken in the *Zuccarini* case, the ability to execute on the Domain Name should not be allowed. It also argues, as related to *Zuccarini*, that since it did not engage in cybersquatting, but "only" copyright infringement, the relief being sought by Xcentric is not warranted. These arguments fail for a number of reasons. As set forth in the Order on Xcentric's Motion for Entry of Default Judgment, ComplaintsBoard was found to have "copied large quantities of copyrighted works of the Rip-Off Report." *See* Order, attached hereto as **Exhibit "B"**. The Arizona Court further found that ComplaintsBoard "willfully and knowingly engaged in [ ] infringing activities" and has "admitted that the copyright infringements were done for financial game." *Id*. In fact, ComplaintsBoard admits as such, since it has identified itself as Xcentric's "strongest and direct competitor." *See* Response at p. 7. Indeed, the money judgment awarded to Xcentric for the bad actions of ComplaintsBoard is sufficient to allow Xcentric to execute against the property of the judgment debtor to satisfy the judgment.

Next, ComplaintsBoard argues that the Judgment shouldn't be afforded the same weight as if it were a judgment after a trial on the merits. This argument is wholly unsupported by law. ComplaintsBoard already sought to vacate the Judgment. Its request was denied. *See* Docket No. 7. Because the Court has already held that the Judgment is a valid, binding judgment, there is no basis to assert that it should be afforded some lesser effect than if it were a judgment on the merits.

Finally, although ComplaintsBoard argues that it would be "inequitable" to allow Xcentric to execute against the Domain Name, it does not posit any alternative method upon which Xcentric could possibly execute its judgment. In fact, ComplaintsBoard has previously argued that it does not have assets in the United States upon which Xcentric

could recover any portion of its judgment against it. *See*, e.g., Declaration of Mark Schultz in Support of Motion to Vacate Judgment (Docket No. 3) (explaining that ComplaintsBoard is not incorporated "in Arizona or any of the other states in the U.S." and that the website is "run from Riga, Latvia.").

Although ComplaintsBoard argues that the Domain Name is worth "approximately $5 million," it provides no support for such an assertion. Moreover, ComplaintsBoard argues that it could have its website shut down, but fails to explain why that should not be the result when ComplaintsBoard launched its website by stealing Xcentric's content and has failed to pay any monies toward the resulting Judgment.

In *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1325 (9th Cir. 1998), the Ninth Circuit explained that "[a] domain name is similar to a 'vanity number' that identifies its source." In that way, "a domain name mirroring a corporate name may be a valuable corporate asset, as it facilitates communication with a customer base." *Id*. at 1327 (internal citation omitted). Xcentric is simply trying to execute upon a corporate asset.

In an attempt to support its position, ComplaintsBoard attempts to distinguish Xcentric's ability to execute upon any asset of the company through use of a single, unreported, non-final case from the Northern District of Illinois[1]. More importantly, it appears (from ComplaintsBoard's own recitation of the facts) that case dealt with a request to essentially hold a domain name hostage until a judgment was paid. In fact, in that case, after collection procedures commenced, the defendant elected to rejoin the suit and filed an appeal and motion to vacate the default judgment. *See e360 Insight, LLC v. Spamhaus Project*, 2010 WL 2403054 (N.D. Ill. June 11, 2010). The default judgment was upheld, but the underlying damages judgment was later vacated by the Seventh Circuit and remanded for a further inquiry into the proof of damages. *See e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 606 (7th Cir. 2007). That case cannot be used for

---

[1] The Order referenced by ComplaintsBoard does not even appear on Westlaw, nor has ComplaintsBoard attached a copy of the Order for the Court's reference.

6

**REPLY IN SUPPORT**            **Case No: 3:10-mc-80058-SI**

GINGRAS LAW OFFICE, PLLC
4072 E. MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

1 the proposition advocated by ComplaintsBoard. Indeed, there are no cases to support the
2 theory that a party is not allowed to collect a money judgment through execution on an
3 as-yet-unvalued corporate asset of the judgment debtor. As such, the Application for
4 Writ of Execution is proper and should be granted to allow Xcentric to execute against
5 the only identifiable asset of ComplaintsBoard that is located within the United States;
6 i.e., the Domain Name.

### IV. THE COSTS SOUGHT IN THE MEMORANDUM OF COSTS ARE DEEMED ALLOWED BY COMPLAINTS' BOARD'S FAILURE TO APPLY TO HAVE THE COSTS TAXED BY THE COURT

In conjunction with the filing of its Application, Xcentric also filed a Memorandum of Costs pursuant to Ca.Civ.P. § 685.070. ComplaintsBoard misconstrues the statutory requirements for filing the Memorandum and argues that Xcentric has not properly supported its Memorandum. It claims that Xcentric "must file a noticed motion with the Court" in order to present its claimed costs. *See* Response, p. 9 (citing CCP § 685.080). That is not what the referenced statute says. Instead, the referenced statute explains that Xcentric "<u>may</u> claim costs authorized by Section 685.040 by noticed motion." CCP § 685.080 (emphasis added). That section is the alternative option to filing the Memorandum of Costs, which, as explained by CCP § 685.070, can be filed "at the same time as an application for a writ of execution" or at any time "[b]efore the judgment is fully satisfied but no later than two years after the costs have been incurred" by filing "a memorandum of costs with the court clerk and serv[ing] a copy on the judgment debtor." CCP § 685.070(b). This is exactly what Xcentric did, in complete compliance with the statutory authority. In actuality, it is the objections of ComplaintsBoard that are untimely and should be disallowed as having been improperly presented. Pursuant to CCP § 685.070(d), if ComplaintsBoard fails, within 10 days after the Memorandum was served to it, to apply to the Court on noticed motion to have the costs taxed by the Court, "the costs claimed in the memorandum are allowed." CCP § 685.070(d); *see also* CCP § 685.070(c); CCP § 685.090(a)(2) ("Costs are added to and

GINGRAS LAW OFFICE, PLLC
4072 E. MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

become a part of the judgment…[if] a memorandum of costs is filed pursuant t Section 685.070 and no motion to tax is made, upon the expiration of time for making the motion." Thus, because ComplaintsBoard has not filed a Notice of Motion to have the costs taxed by the Court, and the time to do so has expired, all of the costs identified in the Memorandum of Costs are allowed.

## V. THE COSTS SOUGHT IN THE MEMORANDUM OF COSTS ARE REASONABLE AND APPROPRIATE

The Memorandum of Costs identifies those actual costs incurred by Xcentric in its attempt to collect on the Judgment, which include (a) its attorneys' fees and (b) investigative fees. Under the statutory scheme, Xcentric is specifically "entitled to the reasonable and necessary costs of enforcing a judgment." CCP § 685.040. Additionally, attorneys' fees are recoverable as necessary costs if they are authorized by (a) contract, (b) statute, or (c) law. *See* CCP § 1033.5(a)(10). Xcentric is entitled to its attorneys' fees pursuant to 17 U.S.C. §505, and therefore its inclusion in the Memorandum was proper.

When viewing the quantum of work which Xcentric has undertaken to execute upon the Judgment, the attorneys' fees incurred by Xcentric are more than reasonable. Since October, 2009, Xcentric has had to domesticate the Judgment in two separate courts. It attempted to conduct discovery about ComplaintsBoard through judicial means by issuing subpoenas to Google and Yahoo related to ComplaintsBoard. Those subpoenas each were objected to by ComplaintsBoard, who filed a Motion to Quash, thereby necessitating additional litigation on those discovery issues. Next, ComplaintsBoard filed a Motion to Vacate the Judgment, which, again, required additional expenditures of time by counsel for Xcentric. The attorneys' fees incurred by Xcentric have been quite reasonable for having to address the difficulties in attempting to collect on the underlying Judgment.

The investigative fees set forth in the Memorandum are explained to have been incurred as a necessary cost of collection pursuant to CCP § 685.040. As the Court may recall, ComplaintsBoard has not been forthcoming regarding its ownership, its corporate

structure, or the location of any of its assets. Xcentric has incurred great expense in attempting to identify who owns the website www.complaintsboard.com, and to obtain information related to that ownership which would provide assistance in collecting on the Judgment. To accomplish this result, which culminated in the filing of the Affidavit of Identity, Xcentric was required to retain the services of a private investigator, who assisted in locating and identifying certain entities which are, at a minimum, aligned with the true owner of the Domain Name. Absent retention of these investigative services, Xcentric would have been unable to provide the Court with an Affidavit of Identity that would allow it to execute on the Domain Name, since ComplaintsBoard transferred the registrant information of the Domain Name after the underlying lawsuit was initiated. In addition, some of the information was obtained only by coordination with officials in Latvia, which further increased the cost of collection. Under the circumstances, the costs of collection are reasonable.

## VI. CONCLUSION

For all of the foregoing reasons, Plaintiff requests that the Court issue a Writ of Execution in the form previously submitted to levy upon the domain name complaintsboard.com.

DATED this 3rd day of September, 2010.

s/David S. Gingras
David S. Gingras

9

**REPLY IN SUPPORT**           Case No: 3:10-mc-80058-SI

*Certificate of Service*

I hereby certify that on the 3rd day of September, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Erik Syverson
PICK & BOYDSTON, LLP
617 South Olive Street
Suite 400
Los Angeles, California  90014

I have also caused to be delivered a courtesy copy of the foregoing to:

Honorable Susan Illston
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California  94102


                                           s/Debra Gower

GINGRAS LAW OFFICE, PLLC
4072 E. MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

10

**REPLY IN SUPPORT**                                           Case No: **3:10-mc-80058-SI**